VICC Homeowners v. Los Campeones











 




NUMBER 13-02-00006-CV

COURT OF APPEALS

THIRTEENTH DISTRICT OF TEXAS

CORPUS CHRISTI – EDINBURG
                                                                                                                       

VICC HOMEOWNERS’ ASSOCIATION, INC.,
A TEXAS NON-PROFIT CORPORATION,                                  Appellant,

v.
 
LOS CAMPEONES, INC., ET AL.,                                              Appellees.
                                                                                                                       

On appeal from the 107th District Court of Cameron County, Texas.
                                                                                                                       
 
O P I N I O N

Before Justices Hinojosa, Yañez, and Castillo
Opinion by Justice Hinojosa

          Appellees,


 owners of lots in a residential subdivision, sued for a declaratory
judgment to void certain amended restrictive covenants propounded by appellant, VICC
Homeowners’ Association, Inc., a Texas Non-Profit Corporation (“VICC”). Appellees filed
a motion for summary judgment on their declaratory judgment action and a motion for
summary judgment for attorney’s fees. The trial court granted both motions. In two issues,
VICC contends the trial court erred in granting appellees’ motions for summary judgment
and in denying VICC’s motion for new trial. We affirm the trial court’s order granting
appellees’ motion for summary judgment for declaratory judgment. We reverse the trial
court’s order granting appellees’ motion for summary judgment for attorney’s fees and
remand the case to the trial court for further proceedings.
A. Background
          The original covenants and restrictions of the Country Club Estates subdivision were
created in 1969 (“1969 Covenants”). The 1969 Covenants specifically provided
procedures for their amendment. The amending provision required any written agreement
terminating, modifying or revising the 1969 Covenants to be filed in the Cameron County
Clerk’s office. VICC attempted to amend the 1969 Covenants by circulating petitions
among the lot owners. Lot owners who signed the petitions requested that the 1969
Covenants be terminated. No amendments or revisions were attached to or accompanied
the petitions. No subsequent agreement amending or revising the 1969 Covenants was
agreed to or signed by the lot owners.
          On March 15, 2001, VICC filed an “Amended Covenants and Restrictions” (“2001
Amended Covenants”) in the county clerk’s office. The instrument, containing eight pages
of amendments and revisions to the 1969 Covenants, was verified by the
secretary/treasurer of VICC. The verification stated, “a majority of owners of the
Subdivision . . . have executed an agreement in writing . . . approving the attached
amendments.”
          Appellees sued VICC under the Uniform Declaratory Judgments Act, seeking to
have the 2001 Amended Covenants declared void.


 Appellees moved for summary
judgment on the grounds that: (1) the 2001 Amended Covenants were not passed in
compliance with the requirements of the 1969 Covenants; and (2) VICC had failed to
obtain a majority vote to approve amending the 1969 Covenants. Appellees also moved
for summary judgment on their claim for attorney’s fees. Without specifying the grounds,
the trial court granted appellees’ motions for summary judgment.
B. Summary Judgment
          Raising six sub-issues in its first issue, VICC contends the trial court erred in
granting appellees’ motions for summary judgment.
          We review the trial court’s grant of a traditional motion for summary judgment de
novo. See Natividad v. Alexsis, Inc., 875 S.W.2d 695, 699 (Tex. 1994); Alejandro v. Bell,
84 S.W.3d 383, 390 (Tex. App.–Corpus Christi 2002, no pet.). In a traditional summary
judgment, the movant has the burden of showing that there is no genuine issue of material
fact and that it is entitled to judgment as a matter of law. Am. Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex. 1997) (citing Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548-49 (Tex. 1985)). In deciding whether there is a genuine issue of material fact, evidence
favorable to the nonmovant will be taken as true, and all reasonable inferences made, and
all doubts resolved, in its favor. Id. The nonmovant has no burden to respond to a
traditional motion for summary judgment unless the movant conclusively establishes its
cause of action or defense. M.D. Anderson Hosp. & Tumor Inst. v. Willrich, 28 S.W.3d 22,
23 (Tex. 2000).
          When, as in this case, a trial court’s order granting summary judgment does not
specify the ground or grounds relied on for its ruling, the appellate court will affirm a
summary judgment if any of the theories advanced in the motion are meritorious. Carr v.
Brasher, 776 S.W.2d 567, 569 (Tex. 1989); Boren v. Bullen, 972 S.W.2d 863, 865 (Tex.
App.–Corpus Christi 1998, no pet.).
1. Objection to Summary Judgment Evidence
          In the fifth sub-issue of its first issue, VICC complains that the trial court erred in
denying its Motion to Strike Plaintiff’s Summary Judgment Evidence. Specifically, VICC
argues that copies of the 1965 Covenants, the 1969 Covenants, and the 2001 Amended
Covenants should have been stricken from the summary judgment record because they
were not authenticated.
          However, the record reflects that during the summary judgment hearing, the trial
court admitted the exhibits predicated on the county clerk’s authentication. Appellees filed
the certified records the same day. Because this was within the trial court’s discretion, we
overrule the fifth sub-issue of VICC’s first issue. See Garcia v. Willman, 4 S.W.3d 307, 311
(Tex. App.–Corpus Christi 1999, no pet.) (proponent of summary judgment evidence must
be given opportunity to cure defect in summary judgment evidence). 
2. Restrictive Covenants
          In the first sub-issue of its first issue, VICC contends the trial court erred in granting
appellees’ motion for summary judgment for declaratory judgment, thereby declaring the
2001 Amended Covenants void.
          We must first determine if the trial court correctly interpreted the amending provision
of the 1969 Covenants. Restrictive covenants are subject to the general rules of contract
construction. Pilarcik v. Emmons, 966 S.W.2d 474, 478 (Tex. 1998). In construing a
restrictive covenant, the court’s primary task is to determine the intent of its framers. 
Wilmoth v. Wilcox, 734 S.W.2d 656, 657 (Tex. 1987). Like a contract, covenants are
“unambiguous as a matter of law if [they] can be given a definite or certain legal meaning.” 
Pilarcik, 966 S.W.2d at 478. The language of the restrictive covenant may not be
enlarged, extended, stretched, or changed by construction. Wilmoth, 734 S.W.2d at 657. 
Rather, the words and phrases used in the covenant must be given their generally
accepted meaning. Id. at 657-58. To ensure that a covenant’s provisions are given effect,
we interpret the intent of the provisions by giving liberal construction to the covenant’s
language. Pheasant Run Homeowners Ass’n, Inc. v. Kastor, 47 S.W.3d 747, 750 (Tex.
App.–Houston [14th Dist.] 2001, pet. denied); see also Tex. Prop. Code Ann. § 202.003(a)
(Vernon 1995) (“A restrictive covenant shall be liberally construed to give effect to its
purposes and intent.”).
          For a subsequent instrument to amend the original restrictive covenants governing
a subdivision, three conditions must be met. First, the right to amend and the method of
amendment must be expressly provided for in the instrument creating the original
restrictions. Dyegard Land P’ship v. Hoover, 39 S.W.3d 300, 313 (Tex. App.–Fort Worth
2001, no pet.). Second, the right to amend implies only those changes contemplating a
correction, improvement, or reformation of the agreement rather than complete destruction
of it. Hanchett v. E. Sunnyside Civic League, 696 S.W.2d 613, 615 (Tex. App.–Houston
[14th Dist.] 1985, writ ref’d n.r.e.). Third, the amendment may not be illegal or against
public policy. Miller v. Sandvick, 921 S.W.2d 517, 521 (Tex. App.–Amarillo 1996, writ
denied).
          The amending provision of the 1969 Covenants provided:
Upon the expiration of 25 years from date of the execution of this instrument,
the owners of a majority of the lots within the Subdivision may execute and
acknowledge an agreement in writing terminating, modifying or revising these
restrictions and covenants and file the same in the office of the County Clerk
of Cameron County, Texas; thereafter said covenants and restrictions shall
be null and void, or be modified or revised as prescribed in such agreement.
 
Here, neither party claims that the language of the amending provision is ambiguous. 
Thus, giving the applicable language its plain and ordinary meaning, the amending
provision establishes both the right to amend the 1969 Covenants and the method for
accomplishing such an amendment. When the amending provision is read as a whole, and
in the light of its purpose, we conclude it was the intent of the drafters of the 1969
Covenants that any termination, modification, or revision of the covenants be agreed to by
a majority of the lot owners. Thus, VICC was required to obtain the agreement of a
majority of the lot owners to either terminate, modify, or revise the 1969 Covenants. 
Further, any modification or revision of the 1969 Covenants was required to be “as
prescribed in such agreement.”
          Prior to filing its 2001 Amended Covenants, VICC circulated petitions to all the
homeowners of record in the subdivision. The circulated “Petition to Revise Restrictions
and Covenants” provided in relevant part:
[w]e, the undersigned, owners of Lots/Units listed below, pursuant to [the
amending provision], hereby executed [sic] and acknowledge our agreement
to terminate the Restrictions and Covenants and to file this agreement of
termination in the office of the County Clerk of Cameron County, Texas.
 
Places were provided for the lot owners to sign either in favor of or opposed to the “petition
to revise.” No amendments or revisions were attached to or accompanied the petitions. 
No subsequent agreement amending or revising the 1969 Covenants was agreed to or
signed by the lot owners.
          When VICC filed the 2001 Amended Covenants, the instrument purported to be an
agreement to amend or revise the 1969 Covenants. The verification, by the
secretary/treasurer of VICC, stated, “a majority of owners of the Subdivision . . . have
executed an agreement in writing . . . approving the attached amendments . . . .”
          However, a majority of the homeowners had not “executed an agreement in writing
approving the attached amendments made to the [1969 Covenants].” The record contains
no evidence that the homeowners who signed the circulated petition ever saw what was
eventually filed with the county clerk as the 2001 Amended Covenants. At most, by signing
the circulated petition, the homeowners agreed only to terminate the 1969 Covenants. 
Because VICC attempted to modify or revise the 1969 Covenants without the consent of
a majority of the landowners, we conclude that VICC failed to comply with the method of
amendment, that such action was contrary to the intention of the amending provision of the
1969 Covenants, and thus, is of no effect.
          Accordingly, we hold the trial court did not err in granting summary judgment and
declaring that the 2001 Amended Covenants are void. We overrule the first sub-issue of
VICC’s first issue.
3. Attorney’s Fees
          In the fourth sub-issue of its first issue, VICC complains of the trial court’s award of
attorney’s fees because appellees’ motion for summary judgment on attorney’s fees had
no evidence of attorney’s fees attached and appellees produced no such evidence before
the trial court signed its order granting summary judgment.



          As a general rule, the trial court may consider only that summary judgment proof
that was properly on file at the time of the hearing, or filed thereafter and before judgment
with permission of the court. Tex. R. Civ. P. 166a(c); see Allen v. Wachtendorf, 962
S.W.2d 279, 281 (Tex. App.–Corpus Christi 1998, pet. denied). On review, the appellate
court will not consider late-filed summary judgment evidence presented without leave of
court. See J.E.M. v. Fidelity & Cas. Co., 928 S.W.2d 668, 672 (Tex. App.–Houston [1st
Dist.] 1996, no writ); see also Valores Corporativos, S.A. de C.V. v. McLane Co., 945
S.W.2d 160, 162 (Tex. App.–San Antonio 1997, writ denied) (reviewing court could not
consider summary judgment evidence filed three days after judgment was signed).
          On August 30, 2001, the trial court heard and considered appellees’ motion for
summary judgment on attorney’s fees. The trial court’s order granting summary judgment
and awarding appellees attorney’s fees of $33,805.47 was signed on October 22, 2001. 
On December 3, 2001, appellees filed a “Motion to Qualify Attorney’s Fees.” On December
14, 2001, the trial court held an evidentiary hearing, and one of appellees’ attorneys gave
oral testimony regarding appellees’ attorney’s fees.
          The record reflects that prior to October 22, 2001, appellees did not file any
affidavits or other summary judgment evidence in support of their motion for summary
judgment on attorney’s fees. Accordingly, we conclude the trial court erred in signing an
order on October 22, 2001, granting appellees’ motion for summary judgment and
awarding attorney’s fees in the amount of $33,805.47.
          Appellees argue that on December 14, 2001, they presented oral testimony to
support the motion for summary judgment and award of attorney’s fees. However, rule
166a(c) does not allow oral testimony to be received at a summary judgment hearing. Tex.
R. Civ. P. 166a(c). Further, appellees presented this evidence after the trial court signed
the order granting summary judgment. Therefore, the trial court could not have considered
this evidence as support for its decision to grant the motion and award attorney’s fees. 
See J.E.M., 928 S.W.2d at 672; McLane, 945 S.W.2d at 162. 
          We conclude that appellees have not met their burden of showing they are entitled
to summary judgment on attorney’s fees, as a matter of law. See Grinnell, 951 S.W.2d at
425. Therefore, we hold that the trial court erred in granting appellees’ motion for summary
judgment on the issue of attorney’s fees. We sustain the fourth sub-issue of VICC’s first
issue.
          In light of our disposition of the first, fourth, and fifth sub-issues of VICC’s first issue,
it is not necessary to address the remaining sub-issues and issue presented by VICC.
 

 C. DISPOSITION
          We affirm the trial court’s order granting appellees’ motion for summary judgment
for declaratory judgment. We reverse the trial court’s order granting appellees’ motion for
summary judgment for attorney’s fees and remand the case to the trial court for further
proceedings.
 
                                                                           FEDERICO G. HINOJOSA
                                                                           Justice


Concurring Opinion by Justice Castillo

Opinion delivered and filed this
the 19th day of August, 2004.