**William T. GARRETT and Lanetta M. Garrett, Appellants**

v.

**Georgia Kaye SYMPSON and Clifford A. Hall, Sr., Appellees**

NO. 02–16–00437–CV

Court of Appeals of Texas, Fort Worth.

DELIVERED: June 8, 2017

---

ATTORNEY FOR APPELLANT: MICHAEL ALFRED, MOLLY COWAN, HALLETT & PERRIN, P.C., DALLAS, TX.

ATTORNEY FOR APPELLEE: JANNA CLARKE, FORT WORTH, TX.

PANEL: WALKER, KERR, and PITTMAN, JJ.

## MEMORANDUM OPINION [1]

SUE WALKER, JUSTICE

### I. INTRODUCTION

This is an interlocutory appeal from a temporary injunction order prohibiting Appellants William T. Garrett and Lanetta M. Garrett from using their lake house for "commercial/business purposes," from renting or leasing their lake house to multiple individuals, and from renting their lake house to any person for "temporary or transient purposes." The sole issue we address is whether short-term vacation rentals violate restrictive covenants that require the lots to be used for "single family residence purposes" and prohibit commercial use of the lots. Because the restrictive covenants at issue are ambiguous and because we are required to resolve any ambiguity against Appellees Georgia Kaye Sympson and Clifford A. Hall Sr. and in favor of the Garretts' free and unrestricted use of their property, we will reverse the trial court's order granting the temporary injunction and we will order the temporary injunction dissolved.

### II. FACTUAL AND PROCEDURAL BACKGROUND

In December 2015, the Garretts purchased the lake house located at 405 Peninsula Court in the Scenic View Estates in Granbury, Texas ("the Property"). The Property is governed by deed restrictions ("the Restrictions"), which require the Property to be used for "single family residence purposes" and prohibit the Property from being used for commercial purposes. The Restrictions, however, provide that for-rent "signs not exceeding five (5) square feet in size" may be posted.

In February 2016, the Garretts began advertising and renting the Property through the website VRBO. As of November 4, 2016,[2] the Garretts had rented the Property for approximately 100 nights to various groups of individuals.[3] The Garretts' practice is to rent the entire house to one individual who is at least twenty-five years old, and that individual is allowed to bring other individuals to stay overnight at

---

1. *See* Tex. R. App. P. 47.4.

2. This is the date the trial court conducted the temporary-injunction hearing.

3. The reviews from the VRBO website, which were admitted into evidence at the temporary-injunction hearing, mention that guests used the "tremendous eating, game playing[,] and conversation areas" and the "delightful bed & bath arrangements."

the Property. The Garretts also require the individual who rents the Property to explain his or her planned use of the Property; the Garretts turned down rental requests that they "just didn't feel like fit the [P]roperty as well as the neighborhood." The Garretts expected to earn $50,000 in rental income from the Property during the first twelve months it was listed on VRBO and up to $100,000 in rental income from the Property during the following twelve-month period.[4]

Approximately seven months after the Garretts started renting the Property on VRBO, Appellees, who own nearby property, filed suit for a declaratory judgment and sought a temporary and permanent injunction based on the following Restrictions:

SECTION II. USE OF LAND:

(a). No lot or plot shall ever be used for other than single family residence purposes. No dwelling house located there-on shall ever be used for any other than single family residence purposes, no[r] shall any outbuilding or structure located thereon be used in any manner other than incidental to such family residence purposes. The erection and/or maintenance and/or use of any lot or plot for other purposes including but not limited to commercial or professional purposes is hereby expressly prohibited.

. . . .

SECTION VIII. MISCELLANEOUS:

. . . .

(d) No noxious or offensive trade or activity shall be carried on upon any lot or plot, nor shall anything be done or placed thereon, which may be or become an annoyance or nuisance to the neighborhood.

Appellees challenged the short-term rentals of the Property because they "believe personally that one year should be the minimum period of time for leasing a property."

The Garretts answered and asserted the affirmative defenses of unclean hands, laches, and waiver. The Garretts also filed a brief in opposition to Appellees' application for temporary injunction, arguing that the Restrictions allow the Property to be rented without limiting or addressing the duration of such rentals [5] and that rental of the Property was neither a commercial purpose nor could it be considered a noxious or offensive trade or activity under the Restrictions.

The trial court held a hearing on Appellees' application for temporary injunction and heard testimony from Mr. Garrett and both Appellees. The trial court granted Appellees' application for temporary injunction and ordered the Garretts to immediately cease and desist from the following: using the Property for "commercial/business purposes"; renting, subrenting, leasing, or subleasing the Property to multiple individuals, multiple families, and groups; and renting, sub-renting, leasing, or subleasing the Property to any person or the public for "temporary or transient purposes." [6] The temporary-

---

**4.** At the time of the temporary-injunction hearing, the Property was booked through October 2017.

**5.** Section VIII listing the miscellaneous Restrictions includes the following: "(f) The construction or maintenance of billboards, poster boards[,] or advertising structures of any kind on any part of any lot or plot is prohibited, except that signs not exceeding

five (5) square feet in size advertising property shown on said plat for sale or rental, are permitted[.]"

**6.** The trial court's order did not specifically address the miscellaneous Restriction pertaining to a "noxious or offensive trade or activity," presumably because it enjoined the Garretts from renting the Property.

injunction order further ordered Appellees to execute and file a $1,000 bond. The Garretts then perfected this interlocutory appeal.

## III. Appellees Did not Establish that the Restrictions Are Enforceable as Written

In their first issue, the Garretts argue that the trial court erred by applying the Restrictions to enjoin them from renting the Property to guests on a short-term basis.

### A. Standard of Review

While we review a trial court's grant of a temporary injunction for an abuse of discretion, *Butnaru v. Ford Motor Co.*, 84 S.W.3d 198, 204 (Tex. 2002) (op. on reh'g), the temporary injunction's validity here rests upon the trial court's construction of the Restrictions, which we review de novo, *see City of Garland v. Dallas Morning News*, 22 S.W.3d 351, 357 (Tex. 2000); *Bizios v. Town of Lakewood Vill.*, 453 S.W.3d 598, 600 (Tex. App.—Fort Worth 2014), *aff'd*, 493 S.W.3d 527 (Tex. 2016).

### B. Law on Interpreting Restrictive Covenants

When interpreting restrictive covenants, we apply the general rules of contract construction. *Pilarcik v. Emmons*, 966 S.W.2d 474, 478 (Tex. 1998). Our primary task is to determine the drafter's intent from the instrument's language. *Wilmoth v. Wilcox*, 734 S.W.2d 656, 658 (Tex. 1987). In ascertaining the drafter's intent, we must examine the covenant as a whole in light of the circumstances present when the covenant was made. *Pilarcik*, 966 S.W.2d at 478. Words used in a restrictive covenant may not be enlarged, extended, stretched, or changed by construction; words and phrases used in the covenant must be given their commonly accepted meaning. *Wilmoth*, 734 S.W.2d at 657–58; *Dyegard Land P'ship v. Hoover*, 39 S.W.3d 300, 308 (Tex. App.—Fort Worth 2001, no pet.).

If a restrictive covenant can be given definite legal meaning, it is unambiguous and should be construed liberally to effectuate its intent. *See* Tex. Prop. Code Ann. § 202.003(a) (West 2014); *Jennings v. Bindseil*, 258 S.W.3d 190, 195 (Tex. App.—Austin 2008, no pet.). However, when a restrictive covenant may reasonably be interpreted in more than one way, it is ambiguous, and we will resolve all doubts in favor of the free and unrestricted use of the property, strictly construing any ambiguity against the party seeking to enforce the restriction. *Wilmoth*, 734 S.W.2d at 657; *Dyegard Land P'ship*, 39 S.W.3d at 308–09. The party seeking to enforce a restrictive covenant has the burden of showing that the restriction is valid and enforceable. *Gillebaard v. Bayview Acres Ass'n*, 263 S.W.3d 342, 347 (Tex. App.—Houston [1st Dist.] 2007, pet. denied).

### C. The Restrictions Are Ambiguous [7]

Here, the Restrictions provide that the Garretts may use the Property solely for "single family residence purposes." The phrase "single family residence purposes" is not defined in the Restrictions, nor does the phrase "single family residence purposes" have a com-

---

7. Only a handful of Texas cases exist construing restrictive covenants similar to the one at issue to determine whether short-term rentals of property are allowed. Because the Garretts point out in their brief that a number of courts in other states have looked at this issue, we reference out-of-state cases in our analysis in addition to the Texas cases on point.

monly accepted meaning. The Restrictions do, however, reflect that the drafters contemplated the leasing of homes because the Restrictions permit signs advertising the Property for rent. The Restrictions do not state a minimum permissible duration for the leasing of homes but do set a limit of six months for utilizing a garage or outbuilding as a dwelling while the construction of the main dwelling is proceeding. Moreover, despite allowing the Property to be rented, the Restrictions prohibit the Property from being used for commercial purposes without specifying what activities constitute commercial purposes.

Under these circumstances, we conclude that the phrase "residence purposes"[8] is ambiguous in two respects. First, "residence purposes" is ambiguous as to whether "residence purposes" is viewed only in contradistinction to business or commercial purposes; and, if not so limited, it is ambiguous both as to whether "residence purposes" requires an intention to be physically present in a home for more than a transient stay and as to whether the focus of the inquiry is on the owner's use of the Property or the renter's use. *See Scott v. Walker*, 274 Va. 209, 645 S.E.2d 278, 283 (2007). Second, if the phrase "residence purposes" carries with it a duration-of-use component, it is ambiguous as to when a rental of the Property moves from short-term to long-term. *Id.* Because we conclude that the Restriction requiring the Property to be used for "single family residence purposes" is ambiguous, we must strictly construe the ambiguity against Appellees and resolve all doubts in favor of the free-and-unrestricted use of the Property. *See Wilmoth*, 734 S.W.2d at 657; *Zgabay v. NBRC Prop. Owners Ass'n*, No. 03-14-00660-CV, 2015 WL

5097116, at *3 (Tex. App.—Austin Aug. 28, 2015, pet. denied) (mem. op.); *Dyegard Land P'ship*, 39 S.W.3d at 308–09.

### D. Appellees' Contentions on Appeal

#### 1. Whether Section 202.003(a) Applies

Because we hold that the Restrictions are ambiguous, we are not required to liberally construe the Restrictions to effectuate their intent, as set forth in Texas Property Code section 202.003(a) and as argued by Appellees. *See Zgabay*, 2015 WL 5097116, at *3; *see also Wilmoth*, 734 S.W.2d at 657 (stating that restrictive covenants will not be enforced if they are not clearly worded). Nor are we bound by the decisions that Appellees rely on from the San Antonio and Beaumont courts of appeals, which treated the restrictive covenants before them as unambiguous and applied section 202.003(a) in construing the restrictive covenants. *See Tarr v. Timberwood Park Owners Ass'n, Inc.*, 510 S.W.3d 725, 729–30 (Tex. App.—San Antonio 2016, pet. filed); *Benard v. Humble*, 990 S.W.2d 929, 931 (Tex. App.—Beaumont 1999, pet. denied); *Munson v. Milton*, 948 S.W.2d 813, 815–17 (Tex. App.—San Antonio 1997, pet. denied).

#### 2. Whether Short–Term Rentals Constitute Transient Use and Commercial Purposes Rather than "Residence Purposes"

 Appellees argue that short-term rentals of the Property violate both the Restriction requiring the Property to be used for "residence purposes" and the Restriction prohibiting using the Property for commercial purposes. Appellees first argue that, based on the United States Supreme Court's two-part definition of "residence"

---

**8.** Because Appellees specifically state that they do not object to the parties to whom the Property is rented, we focus our analysis solely on the "residence purposes" portion of the Restriction.

that requires both "physical presence and an intention to remain," a renter must intend to make the Property his residence; otherwise, the renter's use of the Property as his temporary dwelling constitutes only a transient use. *See Martinez v. Bynum*, 461 U.S. 321, 330, 103 S.Ct. 1838, 1843–44, 75 L.Ed.2d 879 (1983). Although Appellees invite us to utilize the *Martinez* two-part definition of "residence," we decline to do so because the Restrictions here do not limit the Property's use to merely a residence but rather to "residence *purposes.*" [Emphasis added.] Our holding above—that "residence purposes" is ambiguous when construed as a whole with the Restriction allowing the Property to be rented for an unspecified duration—requires that we construe the ambiguity against Appellees and in favor of allowing the Garretts to use the Property for short-term rentals. *See Wilmoth*, 734 S.W.2d at 657; *Zgabay*, 2015 WL 5097116, at *3; *Dyegard Land P'ship*, 39 S.W.3d at 308–09.

Appellees also argue that "[a] transient rental is a commercial use and is a violation of the ... Restrictions" and contend, without citing any authority, that "[t]he marketing and booking through the VRBO service is a clear indication of the commercial nature of the Appellants' enterprise." Essentially, Appellees argue that they believe rentals of the Property for a minimum of one year are permissible under the Restrictions as long as a renter uses the Property as a permanent residence and evinces an intent to stay, but advertising and renting the Property through VRBO for a shorter period of time constitutes transient rentals that violate the Restrictions' prohibition on using the Property for "commercial purposes."[9] Other

courts that have looked at this issue have stated that if a vacation renter uses a home "for the purposes of eating, sleeping, and other residential purposes," as was done in the present case, "this use is residential, not commercial, no matter how short the rental duration." *See Wilkinson v. Chiwawa Cmtys. Ass'n*, 180 Wash.2d 241, 327 P.3d 614, 620 (2014); *see also Pinehaven Planning Bd. v. Brooks*, 138 Idaho 826, 70 P.3d 664, 668 (2003). Moreover, an owner's receipt of rental income from either short- or long-term rentals in no way detracts from or changes the residential characteristics of the use by the tenant. *Wilkinson*, 327 P.3d at 620; *see also Slaby v. Mountain River Estates Residential Ass'n*, 100 So.3d 569, 580 (Ala. Civ. App. 2012) (on reh'g) ("When the Slabys rent their cabin, they no doubt realize some pecuniary gain, but neither that financial benefit nor advertisement of the property or the remittance of a lodging tax transforms the nature of the use of the property from residential to commercial"). The Garretts' short-term rentals of the Property thus do not violate the Restriction prohibiting commercial use. *See Slaby*, 100 So.3d at 582 (holding short-term vacation rentals are not barred by commercial-use prohibition in covenants); *Pinehaven Planning Bd.*, 70 P.3d at 668 (same); *Wilkinson*, 327 P.3d at 621 (same).

### 3. Whether *Zgabay* Is Distinguishable

Appellees further assert that the *Zgabay* opinion from the Austin Court of Appeals, which we rely on, is "completely distinguishable from the instant case" because "[t]here, the determination was what a 'single family' was." Contrary to

---

9. Within their argument, Appellees rely on *Wein v. Jenkins*, No. 03-04-00568-CV, 2005 WL 2170354, at *1–3 (Tex. App.—Austin Sept. 9, 2005, no pet.) (mem. op.). That case, however, is distinguishable on its facts; the deed

restriction at issue prohibited lots from be used "for anything other than single-family, *private* residential purposes," and the property was being used as a commercial bed and breakfast. *Id.* at *1 (emphasis added).

Appellees' assertions, the court in *Zgabay* looked at the same issue presented here—whether restrictive covenants can be enforced if they allow a property to be leased but provide no term of duration—and construed a restrictive covenant worded similar to the one here. 2015 WL 5097116, at *1. The *Zgabay* court held that the restrictive covenant—which restricted the property's use to "single family residential purposes"—was ambiguous because the drafters of the restrictive covenants recognized and permitted the leasing of homes via a restriction on the size of rental signs, recognized and disallowed most temporary residencies in the context of temporary structures, and did not define "single family residential purposes" to exclude temporary or transitory use of permanent homes as dwellings. *Id.* at *3. *Zgabay* is thus squarely on point and supports our holding.

### E. Appellees Did Not Meet Their Burden

Here, the burden of proof was on Appellees to show that the Restrictions are enforceable as written. *See Gillebaard*, 263 S.W.3d at 347. Appellees, however, did not meet their burden because the Restrictions are ambiguous. Accordingly, the Restrictions must be interpreted in favor of the Garretts' free and unrestricted use of the Property, thus allowing the Property to be used for short-term rentals. *See Wilmoth*, 734 S.W.2d at 657; *Zgabay*, 2015

---

10. Our holding does not prohibit residential communities from proscribing short-term rentals; we hold only that the Restrictions at issue did not do so.

11. In their second issue, the Garretts argue that the trial court abused its discretion by finding "that (a) the Garretts breached the restrictive covenants, and/or (b) Plaintiffs were not barred from obtaining a temporary injunction based on the defenses of unclean hands, delay, and/or waiver." In their third

WL 5097116, at *3; *Dyegard Land P'ship*, 39 S.W.3d at 308–09. Accordingly, we hold that the trial court abused its discretion by granting Appellees' application for temporary injunction,[10] and we sustain the Garretts' first issue.

### IV. CONCLUSION

Having sustained the Garretts' first issue, which is dispositive of this appeal, we reverse the trial court's order granting the temporary injunction and we order the temporary injunction dissolved.[11]

issue, the Garretts challenge the adequacy of the injunction bond. Having sustained the Garretts' first issue and reversed the order granting the temporary injunction, we need not address the Garretts' second and third issues. *See* Tex. R. App. P. 47.1; *Mussina v. Morton*, 657 S.W.2d 871, 873 (Tex. App.—Houston [1st Dist.] 1983, no writ) (refusing to consider adequacy of injunction bond after holding that trial court abused its discretion by granting temporary injunction).