

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-18-00061-CV

_____

LOUIS SCOMA, JR. AND SUE SCOMA, Appellants

V.

COLLEYVILLE SPRING GARDEN TOWNHOMES RESIDENTIAL
ASSOCIATION, INC., Appellee

On Appeal from County Court at Law No. 2
Tarrant County, Texas
Trial Court No. 2016-001611-2

Before Sudderth, C.J.; Kerr and Pittman, JJ.
Memorandum Opinion by Justice Pittman

## MEMORANDUM OPINION

Appellants Louis Scoma, Jr. and Sue Scoma sued after their townhome community's HOA constructed a building in the pool area, which obstructed their view of the pool. They contended that the HOA put the building on land on which only a residence could be constructed and that the building was an impermissible outbuilding. The HOA countered that the building was on common property and was permissible. The trial court granted summary judgment for the HOA, and the Scomas now appeal.

## BACKGROUND

The Scomas own a townhome in the Colleyville Spring Garden Townhomes Development in Colleyville, Texas. At the time the Scomas purchased their townhouse, there was no building or other improvement between their townhome and the community's pool area.

In 2015, the HOA decided to build a small building by the pool (the Pool Building) to relocate the pool's pumps, filter, and heater, as well as to provide extra storage to residents. The HOA opted to put the building in the location where the pool equipment was already located, which would put the building between the pool and the Scomas' townhome. The Scomas objected that constructing the building in that location would obstruct their view of the pool and diminish their access to natural light on that side of their home. They offered to pay the difference in cost to have the Pool Building constructed in a different location. The HOA board put the

issue to a vote among the HOA membership, and the membership voted to approve the construction in the objected-to location.

After the HOA began construction on the Pool Building, the Scomas sued. They sought a declaratory judgment[1] and a temporary restraining order and temporary injunction. They contended that the construction violated the community's governing documents, specifically: (1) the 2008 "First Amended Declaration of Covenants, Conditions, and Restrictions for Spring Garden Townhomes" (Declaration) and (2) the 2008 "First Amended Colleyville Spring Garden Town Homes Residential Association, Inc. Architectural Control Guidelines" (Guidelines).

No restraining order or injunction was issued, and the HOA completed the Pool Building's construction while the suit was ongoing. By amended petition, the Scomas sued for breach of contract (i.e., the Declaration) and for a declaratory judgment that the construction did not comply with the Declaration. They also sought a permanent injunction requiring the HOA to demolish the Pool Building.

The parties tried to the bench the question of whether the Pool Building had been constructed on a "lot," as the Scomas argued, or on "common property," as the HOA contended. The designation of the land mattered because the Declaration provides that a lot, as defined therein (Lot), may be used and occupied only "for single family residential purposes." The Scomas argued that when the community was

---

[1]The Scomas initially also sued the members of the HOA board of directors for breach of fiduciary duty. They later nonsuited their claim against the board members.

3

originally platted, it described the land on which the pool and Pool Building now sit as "Block D, Lots 4 and 5" and that the Tarrant County Appraisal District designates the property as being "vacant land, residential," with a legal description of "Block D, Lot A." They further contended that the land "can't be common property, because it's owned in fee by the HOA."

The HOA asserted that the Pool Building had not been built on a Lot because the land is not land "which is or will be improved with a residential dwelling" and that the land was therefore not regulated as a Lot under the Declaration. It contended instead that the Pool Building had been built on "common property" as defined in the Declaration (Common Property) and that the community's plat had been amended in 1999 to designate the area as a common area on which the pool was then constructed. It pointed out that the Appraisal District's legal description now "specifically says, 'Spring Garden Addition, Block D, Lot A, Common Area,'" and it argued that under the Declaration, the land was Common Property.

The Declaration provides that Common Properties "may not be owned by the [HOA] in fee," but in some instances, could be held as an easement or leased, or "be areas of land that are . . . maintained by the [HOA] for the use and benefit of the Owners and the Properties." At trial, the parties agreed that the HOA owned the land on which the Pool Building had been built in fee and had done so for some time. The HOA contended, and the Scomas did not disagree, that it had owned the land since 1999, when it constructed the pool.

The trial court rendered a final judgment declaring that the Pool Building had been constructed on Common Property as defined in the Declaration, and, as such, the HOA had not violated the Declaration with its construction. It ordered that the Scomas take nothing on their claims, and the Scomas now appeal.

## STANDARD OF REVIEW

We review de novo a trial court's construction of a community's dedicatory instruments, such as restrictive covenants. *Garrett v. Sympson*, 523 S.W.3d 862, 866 (Tex. App.—Fort Worth 2017, pet. denied); *see* Tex. Prop. Code Ann. § 202.001 (defining "dedicatory instrument" to mean "each document governing the establishment, maintenance, or operation of a . . . townhouse regime" and "includes a declaration or similar instrument subjecting real property to restrictive covenants" as well as "properly adopted rules and regulations of the property owners' association"). We apply general rules of contract construction when interpreting restrictive covenants. *Garrett*, 523 S.W.3d at 866; *Ostrowski v. Ivanhoe Prop. Owners Improvement Ass'n, Inc.*, 38 S.W.3d 248, 252 (Tex. App.—Texarkana 2001, pet. denied) (noting that restrictions in dedicatory instruments are treated as contracts between the parties and are therefore subject to the general rules of contract construction). Our primary task is to determine the drafter's intent from the instrument's language. *Garrett*, 523 S.W.3d at 866. We must liberally construe restrictive covenants to give effect to their purposes and intent. *Vill. of Pheasant Run Homeowners Ass'n, Inc. v. Kastor*, 47 S.W.3d 747, 751 (Tex. App.—Houston [14th Dist.] 2001, pet. denied) (citing Tex.

5

Prop. Code Ann. § 202.003). However, we must give the words and phrases used in a restrictive covenant their commonly accepted meaning and may not enlarge, extend, stretch, or change them by construction. *Garrett*, 523 S.W.3d at 866; *see also Severs v. Mira Vista Homeowners Ass'n, Inc.*, 559 S.W.3d 684, 697 (Tex. App.—Fort Worth 2018, pet. filed).

## DISCUSSION

In their sole issue on appeal, the Scomas ask whether the trial court erred in concluding that the HOA constructed the Pool Building on Common Property as defined in the Declaration. Based on the plain language of the Declaration, we hold that it did not.

## I. The Declaration Does Not Prohibit the Pool Building's Construction.

The Declaration prohibits the use or occupancy of a Lot "for any purpose other than as a private single family detached residence." The Declaration further provides that no "structure or building, other than the residence to be built thereon, shall be placed on any Lot." The Scomas point out that when the community was originally platted, the land on which the Pool Building was later constructed was platted as "Block D, Lots 4 and 5" and that the Pool Building is not a single family detached residence. Based on these assertions, they argue that the construction violated the Declaration. To counter the Scomas' argument, the HOA pointed out that the Tarrant County Appraisal District now lists a legal description for the land as

"Block D, Lot A, **Common Area**."[2] The HOA asserted that it acquired the land in 1999, replatted Lots 4 and 5 as a common area, and constructed the pool across it. It produced the original plat and the replat as evidence.

However, regardless of how the land is now platted, the Declaration uses a specific definition of the term "Lot": a plot or tract of land that (1) is designated as a lot on a recorded subdivision map or community plat *and* (2) "is or will be improved with a residential dwelling." The Pool Building's land therefore could not be a Lot for purposes of the Declaration's restrictions if it was not land that "is or will be improved with a residential dwelling."

It was undisputed that the land in question, at the time of the Pool Building's construction, was not improved with a residential dwelling. Nor was there any evidence that it ever would be. The part of what is now platted as common area, where the Pool Building was constructed, was also where part of the pool and the pool's spa are located, and the evidence and arguments at the hearing further showed that the Pool Building was constructed essentially on top of the area on which the pool's pumps, filter, and heater were already located. On this set of facts, the trial court correctly concluded that the Pool Building's land was not a Lot for purposes of the Declaration. *See Hicks v. Falcon Wood Prop. Owners Ass'n*, No. 03-09-00238-CV, 2010 WL 3271723, at *6 (Tex. App.—Austin Aug. 19, 2010, no pet.) (mem. op.)

---

[2]The Scomas do not address this newer legal description in their brief.

(stating that determination of whether a particular set of facts constitute a violation of restrictive covenants is a question of law). Thus, the trial court correctly concluded that, even construing the Declaration liberally, under its plain language, the restrictions on Lots did not prohibit the HOA from constructing the Pool Building. *See Garrett*, 523 S.W.3d at 866 (stating that we must give words in restrictive covenants their common meaning); *see also Severs*, 559 S.W.3d at 697 (same). We overrule this part of the Scomas' issue.

## II.    The HOA's Ownership of the Land Did Not Make It a "Lot."

The Scomas next argue that the Pool Building's land could not be Common Property because the HOA owns it in fee, and the Declaration prohibits the HOA from owning Common Property in fee. We disagree that the HOA's ownership prevents the land from being Common Property.

The Declaration defines "Common Properties" to mean both (i) an easement for ingress and egress over property described on an exhibit attached to the Declaration and (ii) "any areas of land . . . known, described[,] or designated or which shall subsequently become known, described[,] or designated as Common Properties intended for or devoted to the common use and enjoyment of the Owners." The Scomas are correct that the Declaration states that "[t]he Common Properties may

8

not be owned by the [HOA] in fee."[3] However, the no-ownership provision does not alter the Declaration's definition of Common Properties. The Scomas do not explain how the HOA's possible breach of the Declaration works to prevent the Pool Building's land from meeting the Declaration's definition of Common Properties. *See Garrett*, 523 S.W.3d at 866. And regardless of whether the Pool Building's land was Common Property, the land is not a Lot, and the Declaration therefore did not restrict its use to a single-family residence. We overrule this part of the Scomas' issue.

## III.    The Guidelines Do Not Prohibit the Pool Building's Construction.

Finally, the Scomas contend that the Pool Building is an "outbuilding" under the Guidelines and its construction was therefore prohibited. This contention is erroneous because it interprets the Guidelines out of context with the Declaration. *See El Paso Field Servs., L.P. v. MasTec N. Am., Inc.*, 389 S.W.3d 802, 805 (Tex. 2012) ("[W]e must examine and consider the entire writing in an effort to harmonize and give effect to all the provisions of the contract so that none will be rendered meaningless." (citations and internal quotation marks omitted)).

Although the Scomas are correct that the Guidelines regulate "outbuildings" and mandate that "[n]o outbuildings shall be constructed on the Properties," the Scomas are incorrect that the Pool Building is an "outbuilding" in violation of the

---

[3]On the other hand, the Declaration also provides for the HOA's board of directors to have the right to contract for goods and services "from and after the date on which title to the Common Properties has been conveyed to" the HOA.

Guidelines. Indeed, in making such an argument, the Scomas are ignoring the specific purposes of the Guidelines themselves. Most importantly, the Guidelines are subject to the restrictions and terms of the Declaration. The Guidelines expressly provide that "in the event of a conflict between these Guidelines and the Declaration, the Declaration shall control." The Declaration gives the HOA the right and option to alter, improve, landscape, or utilize construction measures and activities of any kind or nature on or within the common areas. Certainly, this right includes the ability to construct the Pool Building to protect and maintain the community pool and its equipment and to make the community pool area more enjoyable, quieter, and visually attractive for all residents. Simply put, to the extent the Guidelines conflict with a grant of authority or provision in the Declaration to the HOA, the Guidelines must necessarily yield to the Declaration. *See Sanders v. Future Com, Ltd.*, No. 02-15-00077-CV, 2017 WL 2180706, at *5 (Tex. App.—Fort Worth May 18, 2017, no pet.) ("[W]e must review all the documents together to ascertain the parties' agreement rather than voiding essential parts of the [c]ontract whole cloth."). Otherwise, the HOA could arguably never make improvements to the commonly shared property of the residents.

We overrule the remainder of the Scomas' issue.

## CONCLUSION

Having overruled the Scomas' issue, we affirm the trial court's final judgment.

10

/s/ Mark T. Pittman
Mark T. Pittman
Justice

Delivered:  January 31, 2019